FILED
2026 SEP 24 PM 12: 28
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ AG
DEPUTY

**UNITED STATES DISTRICT COURT**
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**MERCEDES J. WILLIS,**

Plaintiff,

v.

**CHARTER COMMUNICATIONS, LLC, d/b/a SPECTRUM,**

Defendant.

**Civil Action No. __________**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1:26CV02675ABD

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mercedes J. Willis ("Plaintiff"), proceeding pro se, files this Complaint against Defendant Charter Communications, LLC d/b/a Spectrum ("Charter" or "Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an employment-discrimination and retaliation action arising from Charter's failure to reasonably accommodate Plaintiff's disabling chronic migraines, interference with protected medical leave, retaliation after she sought leave and accommodations, and working conditions that forced her resignation.

2. Plaintiff was a highly successful Retention Agent/Customer Solutions Representative. She had previously performed the same work remotely with Charter-issued equipment and ranked among Charter's top performers. After Plaintiff was hospitalized and requested protected leave and disability accommodations, Charter terminated her for alleged job abandonment, later reinstated her, denied or removed effective accommodations, and threatened attendance consequences while her symptoms worsened.

3. Plaintiff seeks recovery under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq.

## PARTIES

4. Plaintiff Mercedes J. Willis is an adult resident of Bell County, Texas. At all relevant times, Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

5. Defendant Charter Communications, LLC is a private employer doing business as Spectrum. Defendant employed Plaintiff at its worksite located at 2433 Rutland Drive, Austin, Texas 78748, and conducted business within Texas. Defendant is an employer covered by the ADA and FMLA.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the ADA and FMLA. This Court also has jurisdiction under 42 U.S.C. § 12117(a) and 29 U.S.C. § 2617(a)(2).

7. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant does business in this District, Plaintiff resides in Bell County, and relevant employment decisions and their effects occurred in this District. The Austin worksite is located in the Austin Division.

8. Plaintiff timely exhausted her ADA administrative remedies. She filed EEOC Charge No. 451-2025-05521 against Charter, asserting disability discrimination, retaliation, denial of reasonable accommodation, and constructive discharge.

9. The EEOC issued its Notice of Closure and Rights on July 7, 2026. Plaintiff received and downloaded the Notice on July 7, 2026. This action is filed within 90 days of receipt. A copy of the Notice is attached as Exhibit A.

10. The FMLA does not require exhaustion through the EEOC. Plaintiff brings her FMLA claims within the applicable limitations period.

## FACTUAL ALLEGATIONS

11. Charter hired Plaintiff in approximately November 2023 as a Retention Agent/Customer Solutions Representative.

12. Plaintiff completed training in approximately February 2024 and became a strong performer. She ranked among the top agents and, for a period, ranked number one in enterprise mobile sales. Her commissions commonly averaged approximately $2,500 to $3,000 per month in addition to hourly wages.

13. Charter approved Plaintiff to work from home in approximately February 2024 and again in approximately August 2024. Plaintiff successfully performed her duties remotely using Charter-issued equipment.

14. Plaintiff suffers from chronic migraines, diagnosed in approximately December 2024. When active, her condition substantially limits major life activities, including seeing, concentrating, thinking, working, driving, and neurological and brain functions. Her symptoms include temporary vision loss, severe sensitivity to light and sound, dizziness, and significant head, neck, shoulder, and back pain.

15. Charter knew of Plaintiff's medical condition and limitations. Plaintiff provided medical information, leave paperwork, return-to-work documentation, and accommodation recommendations.

16. Plaintiff was hospitalized on February 13-14, 2025 because of severe migraine symptoms and related pain. She sought and used protected medical leave.

17. On or about March 7, 2025, while Plaintiff was addressing her medical leave and communicating about her absence, Charter notified her that she had been terminated for alleged job abandonment.

18. Plaintiff disputed the termination and provided information showing that she had communicated about her medical condition and leave. After Plaintiff escalated the matter, Charter reinstated her and placed or restored her on medical leave.

19. Plaintiff remained on protected leave from approximately March 2025 until July 2025.

20. Plaintiff returned to work on July 28, 2025 and supplied medical documentation recommending remote or hybrid work and avoidance of fluorescent light and excessive noise. Her provider further explained that migraine medication could cause dizziness or drowsiness and make commuting unsafe.

21. Plaintiff requested reasonable accommodations including working from home, or alternatively a quiet and dark workspace with reduced lighting, appropriate sound reduction, and the ability to rest during an active migraine.

22. The requested remote-work accommodation was reasonable. Plaintiff had already performed the same job remotely, had the necessary equipment at home, and had demonstrated strong performance while working remotely.

23. Charter denied remote work, characterized it as an incentive rather than a medical accommodation, and stated that remote work could create an undue hardship without providing Plaintiff a specific, individualized explanation supported by the actual circumstances of her job.

24. Before Plaintiff returned to the office, Charter told her that she would have a workspace with dimmable lighting. Charter assigned Plaintiff to a quiet cubicle area in the training building, away from the production floor. Plaintiff had access to that assigned workspace. The training-building workspace was separate from the recovery room.

25. Approximately one week later, Charter withdrew the quiet-workspace accommodation in the training building, including the dimmable-lighting arrangement, citing business needs, and required Plaintiff to work on the production floor with more than 200 agents, fluorescent lighting, and substantial noise.

26. Charter offered desk shades and a noise-canceling headset. Plaintiff advised Charter that those measures were not effective because of the triggers in the office environment and requested another accommodation. Plaintiff continued seeking a resolution through the interactive process.

27. Plaintiff was told that if she could not return or remain onsite, she could face attendance consequences. Plaintiff did not continue working onsite after that. Her approximately one-and-one-half-hour commute was worsening her symptoms, and she stopped going to the office while seeking a resolution of her accommodation request.

28. Plaintiff repeatedly followed up with Human Resources and management between approximately August 18 and August 25, 2025, seeking an effective accommodation that would allow her to work. Charter stated that no other accommodations were available and presented

returning to leave or resigning as her options. Plaintiff continued attempting to engage in the interactive process, but no effective accommodation was arranged.

29. On or about August 24, 2025, after Charter denied or removed effective accommodations and left Plaintiff without a safe and workable means to perform her job, Plaintiff resigned. The resignation was not voluntary; the working conditions and lack of accommodation made continued employment intolerable and caused a constructive discharge.

30. After Plaintiff's separation, Charter represented in the unemployment process that it had made several attempts to contact her, had followed the interactive process, and that she resigned voluntarily. Plaintiff disputes those statements and possesses emails and other records documenting her follow-up efforts and Charter's lack of response. Charter also provided the Texas Workforce Commission with an incorrect resignation letter from Plaintiff's earlier employment separation in 2020, rather than the resignation letter concerning her 2025 separation. The submission of that incorrect letter caused further investigation and delayed Plaintiff's receipt of unemployment benefits for additional months, worsening her financial hardship.

31. As a direct and proximate result of Defendant's actions, Plaintiff lost wages, commissions, employment benefits, and career opportunities and experienced financial hardship and emotional and physical distress. Plaintiff has had difficulty paying rent, her vehicle payment, utilities, and household expenses while supporting two children.

**COUNT I - ADA DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE**

32. Plaintiff incorporates paragraphs 1 through 31 as if fully set forth here.

33. Plaintiff is a qualified individual with a disability under the ADA. She could perform the essential functions of her position with reasonable accommodation.

34. Defendant knew of Plaintiff's disability and limitations. Plaintiff requested reasonable accommodations, including remote work or an effective quiet, reduced-light workspace.

35. Defendant failed to provide a reasonable accommodation and failed to engage in a timely, good-faith interactive process. Defendant denied remote work despite Plaintiff's prior successful performance of the same duties remotely and withdrew the quiet-workspace accommodation in the training building. After Plaintiff explained that the offered desk shades and noise-canceling headset were ineffective and requested another accommodation, Defendant stated that no other accommodations were available and presented leave or resignation as her options.

36. Defendant subjected Plaintiff to adverse employment actions because of her disability, including termination for alleged job abandonment, denial and removal of accommodations, threats of attendance consequences, lost work and income, and constructive discharge.

37. Defendant's conduct violated the ADA, including 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

**COUNT II - ADA RETALIATION**

38. Plaintiff incorporates paragraphs 1 through 37 as if fully set forth here.

39. Plaintiff engaged in protected activity by requesting disability accommodations, providing medical restrictions, opposing the denial of her rights, and participating in the accommodation process.

40. Defendant knew of Plaintiff's protected activity and thereafter subjected her to materially adverse actions, including termination for alleged job abandonment, delay or denial of

accommodations, withdrawal of the training-building workspace accommodation, attendance threats, loss of work and income, and conditions resulting in constructive discharge.

41. The close timing, shifting explanations, failure to implement promised accommodations, and pattern of treatment after Plaintiff asserted protected rights support a causal connection between her protected activity and Defendant's adverse actions.

42. Defendant retaliated against Plaintiff in violation of 42 U.S.C. § 12203.

**COUNT III - FMLA INTERFERENCE**

43. Plaintiff incorporates paragraphs 1 through 42 as if fully set forth here.

44. At the relevant time, Defendant was a covered employer, Plaintiff was an eligible employee, and Plaintiff suffered a serious health condition that required inpatient and continuing medical care.

45. Plaintiff provided sufficient notice of her need for medical leave and supplied requested documentation.

46. Defendant interfered with, restrained, or denied Plaintiff's FMLA rights by treating protected or potentially protected absences as job abandonment, terminating her while the leave process was ongoing, pressuring her concerning return to work, and failing to fully restore her to an equivalent position and working conditions following leave.

47. Defendant's conduct violated 29 U.S.C. § 2615(a)(1) and caused Plaintiff recoverable damages.

**COUNT IV - FMLA RETALIATION**

48. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth here.

49. Plaintiff engaged in protected activity by requesting and taking FMLA leave and by asserting her right not to be terminated for protected absences.

50. Defendant took adverse actions against Plaintiff, including the March 2025 termination, reinstatement into diminished or unstable working conditions, threats of attendance consequences, and actions contributing to her constructive discharge.

51. The timing and circumstances support an inference that Plaintiff's protected FMLA activity was a motivating or causative factor in Defendant's actions.

52. Defendant violated 29 U.S.C. § 2615(a)(2), causing Plaintiff recoverable damages.

**DAMAGES AND REQUESTED RELIEF**

53. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and commissions, lost benefits, other monetary losses, emotional distress, inconvenience, loss of enjoyment of life, and other compensable harm.

54. Plaintiff respectfully requests judgment in her favor and the following relief:

• A declaration that Defendant violated the ADA and FMLA;

• Back pay, lost commissions, lost benefits, and other proven economic losses;

• Front pay or reinstatement, as appropriate;

• Compensatory damages available under the ADA;

• Punitive damages to the extent permitted by law;

• FMLA damages, interest, and liquidated damages under 29 U.S.C. § 2617;

• Prejudgment and post-judgment interest;

- Reasonable litigation expenses, costs, and any attorney's fees later incurred and recoverable by law;
- Equitable and injunctive relief as the Court finds appropriate; and
- All other relief, legal or equitable, that the Court deems just and proper.

**JURY DEMAND**

55. Plaintiff demands a trial by jury on all issues so triable.

**Respectfully submitted,**

Date: 9/22/26

Mercedes Willis

MERCEDES J. WILLIS, Pro Se

1021 Chaucer Lane

Harker Heights, Texas 76548

Telephone: (254) 317-4223

Email: mercedes.j.willis@gmail.com